Case 14-1137, Stacey Fry et al. v. Napoleon Community Schools et al. Oral argument, 15 minutes per side. Mr. Herman for the appellants. Good morning and may it please the Court. James Herman on behalf of the appellants of the Fry family. We have brought this appeal seeking reversal of the lower court's grant of defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12C. By way of factual background, Ms. Fry, the daughter of Brent and Stacey Fry, was born with spastic quadriplegic cerebral palsy, which significantly limits her motor skills and abilities. Ms. Fry did not suffer from any cognitive impairments, however. In the spring of 2008, Ms. Fry's pediatrician wrote a prescription for her to use a service dog to assist her with the activities of daily living. This prescription occurred before Ms. Fry ever registered for classes through the Napoleon Community Schools. Shortly after the prescription was written, Mr. Fry and Ms. Fry met with the administrators at the Ezra Ebbey Elementary School, informing them that they intended to have the service dog accompany their daughter to kindergarten when she started in the 2009-2010 school year, and the administrators indicated they would have no issue with that dog accompanying her. Based upon that representation, the Frys purchased a service animal for their daughter, a golden doodle named Wonder, who was trained to assist their daughter in the activities of daily living, taking on and putting off her coat, opening doors, turning on and turning off lights, and helping her transfer from her wheelchair to a toilet when she needed assistance in doing so. When the parents went to the school to request that Wonder be able to accompany their daughter, was that a request to modify the IEP? At that time, Your Honor, the daughter had not even registered for schools and there was no IEP in place. They simply had gone to the school as a courtesy to inform them that their daughter was going to be coming before they purchased the dog. Even though there was no IEP there, was that construed as notice of the need for an IEP? Your Honor, that's not an issue that the court arrived at below on this motion for judgment on the pleadings under 12C, so I can't answer that question, I'm sorry. After attending the training with Wonder, after purchasing the dog, the Frys returned to the school and were informed in October of 2009 that despite the prior representation, to the contrary, the dog would not be allowed to attend the school with their daughter. That representation took place in October of 2009, not as part of any type of an IEP process, but simply as an interaction with the principal of the school, according to the allegations in the complaint. However, there was an issue discussed in January of 2010 at an IEP called by the school where they did raise the issue of whether the service dog should be able to attend the school. And at that IEP, the school denied that accommodation. It certainly could have been done through the IEP process. Your Honor, it may have been able to be done through the IEP process. That's all I'm asking, could have been done through that process. It could have been done. But it isn't necessary that it need to be done that way under the Americans with Disabilities Act or the Rehabilitation Act. Well, that's sort of my question. There are two ways to look at the dog. One way would be to say it's like having an assistant in the room with her, which ultimately I'm sure she did have under the IEP. She had an assistant assigned to her in class. And the dog might fall into that category. The other way to look at it is that the dog is like a walker or a cane, if this child were able to get by with only that. I don't think you'd say that a child had to have a walker specified in an IEP in order to bring one to school. So what I'm interested in is what rule should we adopt if we were to decide this case in your favor? How do we do it and what is the succinct rule that we adopt? I think the succinct way I would put it is the visiting parent standard, Your Honor, that if the accommodation being requested is nothing more than would be something the school was required to extend to a visiting member of the general public, a parent attending for parent-teacher conferences, who would have the right to have a wheelchair if they needed a wheelchair to attend their child's conferences, or needed to have a service dog in order to accommodate them to accommodate a visual impairment. Under those circumstances, the Rehabilitation Act and the Americans with Disabilities Act would say that's simply a reasonable accommodation to a person in a place of public accommodation, and the school was required to give it. Ms. Fry should have no less right, simply because she was a student, to that accommodation. Did anybody ever ask the school what they would do about a seeing-eye dog, for example? The school actually had a policy on seeing-eye dogs, and that was something that the Department of Education looked at when it investigated this matter and found that that policy was inadequate because it simply dealt with seeing-eye dogs. It didn't deal with service animals. But did it allow seeing-eye dogs? It would. But not service dogs. The policy didn't talk about service dogs, it only talked about seeing-eye dogs, so they didn't apply it in this particular case. Was this a district-wide policy, or just at that particular school? It was a district-wide policy at the Napoleon Community Schools. And the policy said seeing-eye dogs are allowed. Correct. Is that in the record by any chance? I believe that that's part of the Exhibit A to our complaint, which is the findings of the civil rights investigation from the United States Department of Education finding that the Napoleon Community Schools had violated Ms. Fry's rights. So if the policy provided for seeing-eye dogs district-wide, and maybe this is a question better left for your adversary, but one of the things raised by the school was the fact that the dog might be a distraction, the fact that there might be allergies from faculty and or students, and they raised sort of a litany of concerns. As part of the justification, I guess, for the denial, how do they deal with these issues with respect to seeing-eye dogs, if they were any? I think that's a question better posed to my adversary, Your Honor. Okay, I'll hold it. But the question really in our mind is whether or not the dog was necessary to contribute to the educational program that was being provided to Elena Fry. And if the answer to that is no, if it was simply an assisted device like a cane or like a walker or like a wheelchair, there is no implication of the idea. And I understand that the educational process is more than just the instructional process for the child. But from your perspective, how does this particular service dog aid the education process, the broad education objectives of the child? I know that, from the record, the dog would help the child balance and get to and from certain places. But bring that onto the educational function. Well, I'm not certain that there is a specific educational function as far as teaching arithmetic or reading. I understand that, but I'm saying how does that facilitate that? Well, I think it facilitates it in that it allows her to, for example, use the toilet without having to seek someone's assistance. It allows her to get through a door without having to ask for assistance in doing so. It allows her to put her coat on and take off her coat without asking someone for help in doing so. That's part of learning to give along in daily society and will be a challenge that Ms. Frye faces for the entirety of her life. And she shouldn't be denied the access of a service animal to do that. But what you're saying is that however someone would see this as relating to an IEP, it doesn't relate to a FAPE. Correct. It's not an educational tool. Am I getting that right? That's right. It's not an educational tool. It's a tool of daily living for Ms. Frye, just as her wheelchair or her walker would be. But in a lot of these FAPEs, that's what they're concerned about providing. So, Bill, learning how to get along in society and how to interact and how to express yourself and all of those things, which it just seems to me like the kinds of things we see in these cases that deal with whether it's an appropriate FAPE, whatever that stands for. Free and appropriate public education. Free and appropriate public education. It seems like that's kind of at the heart of whether she's getting a free and appropriate public education. If one side says you can learn this stuff without having the dog at your side and the other side says you can't learn this stuff unless you have the dog at your side, that's basically what it comes down to, right? It just seems like the kind of issue that these due process hearings and everything that are done under the IDEA address all the time. It's not? I don't believe that it is in all instances. Well, how is it not? Because it seems like it is. I think that there's a couple of issues. The first is that in this particular case, the procedural posture that the case was presented to the court in which it dismissed the case was on a 12C motion. This was not done on a Rule 56 motion. This was not done after an evidentiary record was developed as it was in the Cave case where the IEP was put before the court, school administrators came in and testified, parents came in and testified about the impact that the dog would have upon the day-to-day living and the necessity to help. But if it's something where exhaustion is required, it wouldn't make sense to try the case before you determine whether exhaustion is required or not. I don't think we're asking you to try the case. No, but you're saying the argument can't be made that exhaustion is required in this type of case, unlike in Cave because in Cave they had a hearing. They had a preliminary injunction hearing. Right, I understand. They didn't have one here, right? There was no hearing. There was no discovery. There was nothing but the pleadings that the court was supposed to be looking at. And that comes to the crux of our concern with the court's opinion in that he clearly made factual determinations about the impact the dog would have upon the IEP process. And to do so and to go beyond the pleadings and make those conclusions, we believe is error and requires reversal.  There's a fairly quick resolution process under IDEA. So why wouldn't it be a better approach to give the state educational agency the initial opportunity to sort of resolve this problem? Because I understand you all didn't go to that agency. Why shouldn't they have been given the first crack to try to resolve this? My time is up. May I have a moment to answer? Please answer the question. Yes. The answer is because they shouldn't have to simply check her rights at the door as a qualified individual with a disability simply because she's also a student. They could have gone through that process potentially if they felt that it was necessary, but the rights we're talking about here go beyond those of the rights of a student seeking a free and appropriate public education. Elena Fry had rights and has rights as a member of society as a qualified individual with a disability to access to a place of public accommodation, and she shouldn't have to go through an additional hoop simply because she's a student. Does the statute explicitly say that, though? It only says that if... It says, you know, these are all independent except when you're talking about exhaustion and when there's overlap. I mean, exactly what the scope of the overlap is what we're here to discuss, but what you just said makes it sound like that statute isn't in the books. I mean, you could say, well, any time that they have to exhaust, they're checking their rights at the door because if it weren't for this provision, they wouldn't have had to exhaust. But the provision qualifies the right. It says you have to exhaust if it meets that standard of the statute. If it's seeking the same relief, Your Honor, and we're not seeking the same relief here. We're not seeking a free and appropriate public education for Ms. Fry. No one is denying Ms. Fry received a free and appropriate public education when she was at the school. But you're saying that the relief she's seeking is really incident to or is a part of that whole educational process, helping her to navigate society, deal with interpersonal issues, and you said that's part of that overall educational umbrella. The fact that it's part of her learning to be a member of society, Your Honor, doesn't mean it's part of an educational process that would require input from a professional educator, and that's what the IEP process is designed to do. So you interpret it broadly for some purposes and very narrowly for others. I think that's correct, Your Honor. I think that it needs to be defined differently depending upon the type of accommodation being sought. Okay, thank you. Thank you. Good morning, Your Honors. Ken Chappie appearing on behalf of the school district. This case does involve the rights of a special education student seeking educational accommodations under the IDEA. Now, education under the IDEA, as Your Honors have pointed out, means something different than just a general right to academics. It is about learning life skills. It's providing really the crux of the IDEA. Now, wait a minute. The problem here is she's not trying to learn how to do that. She wants the dog with her so she can do that. This isn't learning to be a member of society and all of that. She might fall down if she doesn't have the dog with her. So the dog really is more like a cane or a wheelchair than it is part of her educational process. Now, she'll also learn in school how to be a member of society and how to communicate and all those other things, too. But in the meantime, she needs the dog so that she'll be able to do that. It's just like, how is this different from the seeing-eye dog? Well, if you're talking about instances where the child needs a dog to learn assistance in toileting and turning on lights, I think that is. . . Not learn assistance in it. Actually assist her. This isn't a learning process with this dog. The dog has already been taught how to help this child. The child, though. . . Well, we don't have any record evidence of what the child's actual capabilities are for the purposes of this motion, but the point of the dog, though, is to help with independent learning skills. Not learn it. Do it. There's a difference between learning independent skills and actually going to the potty, if I can be so blunt. True, Your Honor. And this dog will help her go to the potty. So this dog is like a physical assistance of some kind, not an educational process. Your Honor, I'd have to respectfully disagree on that point because, one, there is no facts about what her toileting capabilities are at the time. I have young children, and it's been a long process teaching them how to properly toilet themselves. How do you distinguish the cane, though? Or do you distinguish the cane? Well, I do distinguish the cane because when you're talking about the assistance of a dog in moving around and observing your environment and helping learn how to be an independent individual. . . Actually, I don't think it is much different than a cane in some respects. But whether or not you had a cane would have to exhaust through the IEP process? If it's a related service or tool to help the student learn independent life skills and is a student that has a qualifying disability under the IDEA. . . Well, let's talk about the seeing-eye dog. Yes, Your Honor. The seeing-eye dog is allowed. The seeing-eye dog is like a crutch. A student can't just get around without assistance. And the seeing-eye dog is that assistance. It's that cane. It's that wheelchair. And nobody goes to pieces when the seeing-eye dog comes to school. And a lot of times those are German shepherds in labs. They, based on my personal experience, shed like crazy. We also have a golden doodle in the family who doesn't shed at all. So all this business about cave and people being allergic to the dog and everything goes out the window if it's a seeing-eye dog. Right? There's a policy that says you can bring your seeing-eye dog to school. It seems to me that what's missing is they haven't updated that policy to say a service dog qualifies too. That's the only difference here. Well, the policies weren't really an issue at the point of the motion to dismiss. Well, I know. That's disturbing me too, frankly. But the point of the administrative, the due process hearing, that a lot of this stuff could have been addressed at that time. Plaintiff's counsel is saying that the rights of the student are limited by this requirement that they exhaust. I think that they're expanded. Well, there are a lot of places where you have to jump through hooks unless you can show that it's futile. Wasn't that going to be pretty futile here based on what we do know that's in the record, that's in the complaint about they made the decision to exclude the dog even before the IEP was completely in place? I mean, they first said yes, and then they said no. What would happen if they had exhausted? How would we be anywhere other than where we are now? Well, the plaintiffs would file a complaint with the Department of Education of Michigan. There would be a hearing officer assigned to it. A hearing would be conducted. I think it's within 45 or 60 days. The hearing officer takes the testimony of everyone involved. And could have said to the school district, you have to do this? Yes, and they could have forced compliance. And if the school didn't comply with it. You can't now, though, because it's retrospective. Right, correct. The statute of limitations on that is passed. But that's the proper avenue for this. The student could have had all of this resolved. I mean, we're talking January of 2010. All this could have been resolved by March or April of 2010. If the school district did not comply with what the hearing officer had said at that time, look, this service animal is required to help the student throughout the school day. It aids in the educational process of the student. You have to allow the service dog into the building without any kind of restriction. The school would have to comply with that. Is the school that she ultimately went to also in your school district? Or is that another? I think that she had transferred to Washington Intermediate School District. This is Jackson Intermediate School District. And the immediate school district, the constituent district, was Napoleon Community School. Those are different counties, aren't they? Yes. Does she live in one county and can go to the other in Michigan? Yes. It's called the Schools of Choice Program. I believe she was. Cross County School of Choice Program? Yes, for special education. She was not even a home school student in the Jackson ISD, I believe. And she did have an IEP before entering that school district. It was prepared in a different school. But that's the whole point, though. Here's an interesting question. Do you know? I know this is off the record, but I'm just interested in this. Did the school where she ended up include the dog in her IEP? Or did they just say, sure, bring the dog, that's okay? I'm not sure the answer to that. I know that there was a change in the law on how a service animal is defined. I think that went into effect March 15, 2011, a year. And did that help? I believe it changed things. I think that's why the school district, our school district, ultimately said you can bring the animal to school. And the plaintiff decided they weren't going to come back to the school. Well, was that you can bring the animal to school, but the dog has to sit in the back of the room? No, I believe. Well, it's hard to say at this point because, again, this was all done on a motion. Without a record, yeah. Correct. But it's a good question. I'm not sure. The record in this administrative process, typically, is pretty thorough. I mean, these are thick records. Absolutely. That's the whole point of having the administrative hearing is because you have to. I haven't seen the thin one. These are experts who hear these cases that only deal on the topic of special education. They are so well-versed in this one finite little area that their expertise and their fact-finding provides an invaluable resource to the parties to a case, the court, everyone involved. So that's really why it's required. And going to the issue of FAPE, because I know it was brought up, I think at the most basic level, when you have a special education student who's requiring some kind of an assistance to go to school and they have an IEP, if the school says that we're disagreeing with your request made in the IEP that we need this accommodation and the net effect of that is the student saying, I can't go to your school then, which basically happened here because the student ended up going homeschooling, then they're not being provided with a free appropriate public education. They're not allowed access to the building. They don't have teaching. They don't have a curriculum. Those students, and they're also not being provided the related services required by the IDEA. So I think it is an issue of FAPE in addition to an educational requirement. Well, yeah, but what if she showed up and said I need to attend in a wheelchair and I can't come in, I can't get in here without the wheelchair and there are steps everywhere. You're too young to remember when that was the case in schools and when special education students didn't exist, they just stayed at home. And the school district said, oh gosh, if we have to put ramps in and internal elevators and all that just for you, we're not going to do it. And she said, okay, well then I can't come to school. That would certainly be an ADA or RA problem, wouldn't it? Well, it would depend on the nature of the disability requiring the wheelchair. If it's a student with a physical disability whose disability does not impact their ability to learn, then they wouldn't even have an IEP. They wouldn't fall under the IDEA. It would be strictly a 504 plan, which would be a 504 ADA claim. It wouldn't be an IDEA claim. So if it's just a physical disability like that where there's no IEP, then I think you would be right about that. And just because in this case there is an IEP, the IEP takes over in effect because of that provision in the IEP having to do with the ADA and the RA. Correct. It allows that student that extra layer of protection where they can go immediately to the state and not have to spend years in litigation. They can go to the Department of Education and have their hearing within a matter of days. I mean, literally counting days as opposed to months and years to have something like this resolved. And, yeah, I think that's the distinguishing factor is the IDEA says that if there's relief that's also available under the IDEA, you must exhaust your administrative remedies first. And the Sixth Circuit has interpreted that also available to mean if your relief can be redressed by any degree. But here's where we're left. If this is more like a cane than it is like an aid to the student, a person aid, her parents would not have had to go through the IDEA exhaustion process to get her into school with a cane even though she had an IEP because she had other learning disabilities or problems. That's correct, isn't it? Well, I don't know if I agree with that. If the student has an IEP, even with the instance of a cane and that's a service that's allowed for in the IEP, a lot of times when you're talking about a young child, they're going to have adult assistance as well, which would be the case here because the adult was helping with the dog. That's all part of a learning process and trying to learn how to do it on your own. That's okay. We're back to where you and I started out. We've come full circle. I think we understand your position. Thank you very much, Your Honors. I'm certainly happy to answer any questions the Court may have, but I did want to address one particular point that Mr. Shapi raised, which is if the IEP is going to be affected by any degree to the accommodation request at the standard that he has urged that the Court to apply. That language comes from this S.E. v. Grant County Board of Education case that was cited, and if you look at the opinion, the Court isn't adopting that as the standard. It simply cites it in passing as a standard that the Ninth Circuit has adopted and doesn't say that that's the standard in this particular court. It doesn't describe what the standard is that the Court should adopt or that it is going to go on to adopt in that particular case, but it didn't apply such a high standard that the Ninth Circuit has. Well, why is that standard, from what I see, not a reasonable standard for this circuit to adopt? I think that the Court goes on to address that in footnote 11 of that opinion, Your Honor, and in footnote 11 they talk about that if the claim had been for damages to compensate for discrimination in violation of the Rehabilitation Act, it's questionable whether relief would be available under the IDEA and exhaustion would not be required and then cites the Court's prior opinion in Gene v. Hadaway. Gene v. Hadaway is at 330 F. 3rd, 758. In that case, the Court held that when a plaintiff has a claim for general damages, not compensatory damages for failure to receive a free and appropriate public education. So the Court held that if you're not trying to say you should pay for me to get education somewhere else, but instead you're trying to get compensation for the injuries that were inflicted upon you because you weren't allowed your rights under the American Disabilities Act or the Rehabilitation Act, under those circumstances, those general damages cases like this one is, there is no requirement to exhaust. And so you need to trace through that case. You can't just rely on the SE v. Grant Board of Education case. You have to look at the prior Gene opinion as well, which creates the parameters that we're dealing with here. And under those parameters, those are exactly the types of damages that we're seeking. We're not seeking compensation for the Fry's as a result of having to transfer to another school district. That's not what we're looking for. We're looking for compensation for the violation of Ms. Fry's civil rights that took place when she was denied access to the school with a service animal. And there are two distinct lines of damages, and the distinction of the damages that were being sought is what creates the issue here that says we don't have to exhaust under the Gene opinion. Unless there's other questions. Thank you, counsel. Thank you very much. Your argument. Case will be submitted. Please call the next case.